**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| ANGELO L. JOHNSON, | 3:06-CV-234-LRH (RAM) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| vs. | **OF U.S. MAGISTRATE JUDGE** |
| DR. JOHN, et al., | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Defendants' Motion for Summary Judgment (Doc. #50[1]). Plaintiff has replied (Doc. #60), and Defendants have opposed (Doc. #61). After a thorough review, the court recommends that the motion be granted.

### **I. BACKGROUND**[2]

This is an inmate civil rights complaint brought under 42 U.S.C. § 1983. At all relevant times, Plaintiff Angelo L. Johnson ("Johnson") was a prisoner in custody of the Nevada Department of Corrections (NDOC) at Northern Nevada Correctional Center (NNCC). (Pl.'s Complaint (Doc. #5) 1.) Defendants include various physicians from the medical department

---

[1] Refers to the court's docket number.

[2] Plaintiff argues that Defendants have failed to provide him with a copy of his medical records. At a motion hearing, the court ordered the court clerk to provide Plaintiff with a copy of the medical records that had been previously submitted under seal. (Doc. #57 [Minutes of Proceedings October 8, 2008].) Because Plaintiff's counsel is now in possession of those records, the court finds that he is able to respond to all relevant issues raised by the instant motion.

at NNCC. (*Id.* at 2.) The sole claim in Plaintiff's complaint relates to the adequacy of the medical care he received for an injured right thumb between the months of March and September 2005. The relevant treatment history is summarized as follows:

Plaintiff was initially treated at Pershing General Hospital on March 26, 2005 after sustaining a fracture, multiple lacerations, and a split thumbnail on his right thumb. (Defs.' Mtn. Summ. J. (Doc. #50) 3.) Upon returning to NNCC, Plaintiff was admitted to the Regional Medical Facility (RMF) at NNCC. (*Id.*) Various nurses and physicians at the RMF examined the thumb several times between March 26 and April 6. (*Id.*) On the latter date, Defendant Dr. Long, an orthopedic specialist contracted by NDOC, concluded that the thumb was healing well, and that the fracture could be addressed by splinting. (In Camera Submission of Med. Records (Doc. #52) 56.) Plaintiff was discharged from the RMF on April 12th, 2005. (Defs.' Mtn. 4.)

The parties dispute whether Plaintiff sought treatment for his thumb for soreness and infection between April 12, 2005 and May 1, 2005. (*Id.*; *see also* Pl.'s Oppo. to Defs.' Mtn. Summ. J. (Doc. #60) 9.) Plaintiff alleges that he submitted multiple written requests (also known as "kites") to be seen by the infirmary, but Defendants have no record of these requests. (*Id.*) On May 1, Plaintiff alleges that he experienced an emergency "man down" situation due to the pain from his thumb, but Defendants have no documentation of this incident either. (Defs.' Mtn. 4; Pl.'s Oppo. 8.) Dr. Johns treated Plaintiff the following day, prescribing a fifteen-day course of antibiotics, a culture test to determine the presence of an infection, and re-admission to the RMF. (*Id.*) A few days later, Dr. Johns examined the thumb and concluded that the infection had been eliminated. (*Id.* at 5.)

Similar to above, the parties dispute whether Plaintiff sought treatment for problems with his thumb between May 11 and May 30, 2005. (*Id.* at 5; see also Pl.'s Oppo. 9.) In particular, Plaintiff alleges that he made repeated complaints regarding a growth at the base of his thumbnail. (Pl.'s Oppo. 9.) The May 30, 2005 entry in his medical records by a nurse indicates that there was no evidence that he had been seen since his April 15 discharge. (Med.

Records 33.) On May 30, when he was about to be transferred to another institution, Plaintiff requested emergency treatment due to pain he was experiencing in his thumb. A nurse provided Plaintiff with pain medication and dressings and scheduled a reevaluation appointment with a doctor. (*Id.* at 103.) The following day, Defendant Dr. Gedney confirmed a growth at the base of Plaintiff's thumb and referred him to Dr. Long. (*Id.* at 8.) After reviewing X-rays films and consulting the relevant medical literature, Dr. Long concluded on June 3 that Plaintiff's thumb fracture needed to be reduced and his nail bed reconstructed. (*Id.* at 58-61.) A culture test indicated that the thumb had an infection, and Dr. Long prescribed antibiotic coverage for the procedure. (*Id.*) Two days before the surgery, a nurse concluded that the thumb infection had subsided. (*Id.* at 6.) After Dr. Gedney submitted a consultation report and received NDOC approval for the surgery, Dr. Long performed the surgery on June 21st.

On June 22, Plaintiff was readmitted to the RMF for pain management following the surgery. He left the RMF a week later at his own request. (*Id.* at 7; Med. Records 9.) On July 1, Plaintiff's medical records indicate that his thumb became reinfected. (Med. Records 10.) The nurses' entries indicate that Plaintiff had to be counseled several times regarding the proper care of his thumb, and that he was observed not using the splint and loosening the bandages. Dr. Gedney prescribed Plaintiff an antibiotic and concluded that the infection had been controlled during a reexamination on July 6. (*Id.*) On July 12, Plaintiff transferred out of the RMF. (Defs.' Mtn. Summ. J. 7.) Besides a visit with a nurse to obtain dressing supplies, Plaintiff did not have any other contact with the medical staff at NNCC until August 17. (Med. Records 109.)

On August 17, 2005, Dr. Long examined Plaintiff's thumb. His report indicates that the injury was healing satisfactorily and that the surgical pins needed to be removed. (Med. Records 25.) The request for this surgery was approved on September 6. On September 9, before the surgery was to occur, a basketball struck Plaintiff's thumb while he was on the yard. The impact resulted in a partial amputation to the interphalangeal thumb joint. (*Id.* at 11, 68.)

The prison transported Plaintiff to Carson Tahoe Hospital, where he was treated by Dr. Gabriel Kent, a hand surgeon. Though there was a medical alternative to reattach the thumb, Plaintiff requested a partial amputation due to the chronic pain he had experienced from it. (*Id.* at 69.) Dr. Kent determined this was a reasonable course of treatment given Plaintiff's history of tobacco use, multiple surgeries, and a high likelihood of altered blood flow in the area. (*Id.*) Dr. Kent then performed the amputation.

Plaintiff alleges that Defendants delayed treatment for thumb over a three-month period, causing him frequent severe pain and an eventual partial amputation. Plaintiff claims that his medical providers violated the Eighth Amendment's prohibition on cruel and unusual punishment through their deliberate indifference to his serious medical needs. (*Id.* at 15.) Defendants move for summary judgment, arguing that Plaintiff received effective medical treatment consistent with the Constitution and that he is responsible for the subsequent traumatic injury to his thumb and the decision to amputate it. They also contend that claim preclusion applies from a related state court proceeding.

## II. LEGAL STANDARD

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute over the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (citing Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996). In deciding whether to grant summary judgment, the court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi*, 84 F.3d at 1197. In doing so, the court

4

must defer to the professional judgment of prison administrators when an inmate civil rights complaint is involved. *Beard v. Banks*, 548 U.S. 521, 526, 530, 126 S.Ct. 2572, 65 L.Ed.2d 697 (2006); *Overton v. Bazzetta*, 539 U.S. 126, 132, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts showing there is a genuine issue for trial. *Anderson,* 477 U.S. at 248. Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.* Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

### III. DISCUSSION

**1.    EIGHTH AMENDMENT**

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A finding of deliberate indifference involves the examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's

responses to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992). A "serious" medical need exists if the failure to treat a prisoner's condition could lead to further injury or the "unnecessary and wanton infliction of pain." *Id.* (citing *Estelle*, 429 U.S. at 104). If Plaintiff's needs were serious, then he must show Defendants acted with deliberate indifference to those needs. *Estelle*, 429 U.S. at 104. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they 'deny, delay, or intentionally interfere with medical treatment.'" *Hunt v. Dental Dept.*, 865 F.2d 198, 201 (9th Cir. 1989). "Deliberate indifference entails something more than mere negligence." *Farmer*, 511 U.S. at 835-36. Instead, it is only present when a prison official "knows of an disregards an excessive risk" to an inmate's health and safety. *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 858 (1994)).

The parties do not dispute that in general, Plaintiff's thumb injury presented a "serious" medical need. Rather, this case turns on whether the Defendants possessed a state of mind that is actionable under the Eighth Amendment. Plaintiff's strongest argument in support of this element of his claim is that he submitted multiple administrative requests (also known as kites) that were allegedly disregarded by prison officials between April 18 and May 1, 2005, and May 11 and May 30, 2005. (Pl.'s Oppo. 18, 19, 20, 21, 23.) Plaintiff contends that these periods of administrative inaction necessitated emergency medical intervention on May 1 and May 30.

Defendants have submitted exhibits extensively documenting Plaintiff's medical history and maintain that he never sought treatment during the relevant periods. This is partially corroborated by a May 30 entry where a nurse observed that Plaintiff had made no contact with medical staff for the past two weeks. (Med. Records 33.) The court's review of the records reveals no entries corresponding to visits with medical staff during the relevant periods or any apparent gaps in the file. Furthermore, while Defendants disclose the medical kites in their possession from Plaintiff, none of these were submitted during the periods of administrative inaction alleged by Plaintiff. In light of the detailed record, the amount of care that was provided to Plaintiff for his thumb, and the fact that all of Plaintiff's other requests appear to

6

have been well-documented[3], the court finds that Defendants have carried their burden to demonstrate that they did not deliberately ignore his medical requests.[4]

The burden shifts to Plaintiff to set forth "specific facts" demonstrating a "genuine issue" for trial. *Anderson,* 477 U.S. at 248. Plaintiff submits no evidence of these multiple ignored medical requests or the May 1st emergency situation, as he has no copies of the multiple forms he allegedly submitted.[5] He also alleges that he saw a "Nurse Suzy" who took down his complaints sometime during the latter half of April, but he does not identify the date and there is no corresponding entry in Plaintiff's medical chart. (Def.'s Oppo. 9; Med. Records 7-8.) Plaintiff did not contemporaneously file any grievances at the time his medical kites were allegedly ignored, as the only administrative complaint related to this matter was filed in October 2005. (Defs.' Mtn. to Dismiss (Doc. #49) 25; Med. Records 133.) Furthermore, he does not deny knowledge of the grievance procedure. (Pl.'s Oppo. 20.) Plaintiff generally[6] fails to provide the date that he submitted the various medical kites, the total number of requests he alleges went ignored, specific information regarding the content of these requests, or whether he has any knowledge of who received or processed the forms. With respect to the alleged "man down" incident on May 1st, Plaintiff does not provide any witnesses who could corroborate his allegations. (Pl.'s Oppo. 8.) While it is true that it is the prison's responsibility to maintain medical records, an inmate cannot exclusively rely on his own unverified assertions to survive summary judgment when they are inconsistent with those records. *See Anderson,*

---

[3] The only medical kites contained in Plaintiff's medical record were filed after the emergency intervention of May 30th and received responses by the infirmary. (Med. Records 107-10.)

[4] It should also be noted that Defendants provided proper care to Plaintiff before the emergency situations. This casts doubt on whether Plaintiff's complaints during the intervening period of alleged administrative inaction constituted a "serious" medical need, as the complaints may have merely evidenced discomfort with the thumb.

[5] There is an unusual occurrence report documenting the May 30th emergency (Med. Records 103), though the mere fact that there was such an emergency does not necessarily prove that Defendants were deliberately indifferent to Plaintiff's medical needs.

[6] Plaintiff does allege that submitted a medical kite on April 15, 2005. (Pl.'s Oppo. 7.)

7

477 U.S. at 248. There is a complete failure of proof that Defendants were deliberately indifferent to Plaintiff's medical needs by ignoring his requests for medical attention.

Plaintiff's remaining allegations fail to raise a claim under the Eighth Amendment. He contends that prison officials failed to provide him with instructions to care for his thumb. There is no evidence to support this contention. To the contrary, the record indicates that nurses repeatedly counseled Plaintiff regarding the proper care of his thumb and that he was observed in the cafeteria without a splint and the dressings loosened, which would prevent its proper healing and potentially expose it to infection. (Med. Records 10.) In any case, the failure to properly counsel a patient regarding self-care states a claim for medical negligence, not a constitutional violation.

The eventual complications that led to a partial amputation of Plaintiff's thumb similarly fail to prove that Plaintiff's care was inadequate. Approximately six weeks after his surgery, Plaintiff experienced an accident causing a serious dislocation and open fracture to his thumb just before his surgical hardware was to be removed. (*Id.* at 69.) There is no evidence that inadequate treatment or post-surgical care contributed to the injuries, and Plaintiff's theory that a bone infection led to the eventual partial amputation is unsupported by the evidence. Approximately three weeks before the injury, Dr. Long reviewed Plaintiff's thumb and found no post-surgical complications. Moreover, the record indicates that following the accident, it was Plaintiff who first proposed the partial amputation and that the attending physician presented an alternative therapy to preserve the digit. However, given Plaintiff's chronic problems with his thumb, including a predisposition for infection, the doctor determined that his request was "appropriate." (*Id.*) An unexpected accident followed by Plaintiff's voluntary decision to amputate his thumb does not amount to a constitutional violation.

Because there is no evidence of a deliberately indifferent state of mind by Defendants in providing medical care, Plaintiff has failed to carry his burden to demonstrate a genuine issue of fact with respect to an essential element of his claim. It is not necessary to consider the other defenses raised by Defendants at this time. The motion for summary judgment should

8

be granted.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **GRANTING** Defendants' Motion for Summary Judgment (Doc. #50).

**IT IS FURTHER RECOMMENDED** that the District Judge enter an Order **DENYING** Defendants' Motion to Dismiss (Doc. #49) as moot.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within ten (10) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. Civ. P., should not be filed until entry of the District Court's judgment.

DATED: July 17, 2009.

_____
UNITED STATES MAGISTRATE JUDGE